JSG

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 278 | DATE | April 23, 2003 |
| CASE TITLE | Richard Feiss v Metropolitan Water Reclamation etc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment is granted in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | Document Number |
| X | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | APR 28 2003 date docketed | | 75 |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| GDS | courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD C. FEISS, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 01 C 0278<br>) |
| | ) Judge Robert W. Gettleman |
| METROPOLITAN WATER RECLAMATION<br>DISTRICT OF GREATER CHICAGO, | )<br>)<br>) |
| Defendant. | ) |

DOCKETED APR 2 8 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Feiss filed a two-count second amended complaint against defendant Metropolitan Water Reclamation District (the "District"), alleging, (1) retaliation under Title VII, 42 U.S.C. § 2000e et seq., and (2) failure to reasonably accommodate plaintiff's disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12117 et seq. Defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated herein, defendant's motion is granted in its entirety.

## FACTS[1]

The District is a unit of local government that provides sewage treatment and related services for an area covering most of Cook County. On or about January 13, 1994, defendant offered plaintiff the civil service position of Storekeeper, conditioned upon his passing a medical examination and pre-placement physical screening. Due to a back injury that limited plaintiff's

---

[1] These facts are drawn from defendant's Local Rule 56.1 Statement of Material Facts and plaintiff's response thereto.

75

ability to carry more than fifty pounds,[2] he could not complete the pre-placement screening, which required him to carry an 85-pound bag of cement on his shoulders for 100 feet.[3] Plaintiff's conditional offer of employment was subsequently revoked.

On February 28, 1994, plaintiff filed a charge against defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination. On March 3, 1994, defendant sent plaintiff a letter "in response to [his] request for accommodation under the Americans with Disabilities Act," reinstating his employment offer. According to that letter:

> It has been determined that the accommodation you seek to perform the duties of Storekeeper is reasonable. Therefore, the District is prepared to reinstate its employment offer, subject to the following conditions: (1) While performing the duties of Storekeeper, if there is a need to lift any item in excess of 50 lbs., you must obtain assistance. This assistance will be in the form of available carts or mechanical equipment, or in the form of a Maintenance Laborer A or Materials Handler Laborer who is assigned to work in your storeroom location. (2) If such assistance is not available, you must contact your supervisor immediately to request such assistance. You may not lift more than 50 lbs. unassisted.[...]

On March 14, 1994, plaintiff commenced employment as a Storekeeper in defendant's purchasing department. The parties dispute whether other employees were available to assist plaintiff with heavy lifting throughout his tenure as Storekeeper and whether plaintiff was expected to do this lifting on his own. At his deposition, plaintiff testified that his supervisor,

---

[2]In his February 8, 2002, response to defendant's interrogatories, plaintiff submitted that his back injury affected his ability to stand for long periods of time, to climb, to lift heavy objects, and to engage in strenuous repetitive activities on the back. There is no evidence that these additional limitations were present at the time of the incidents giving rise to the instant dispute, however.

[3]The other tasks in the pre-placement screening, which plaintiff performed satisfactorily, involved lifting 50 pounds from floor to waist five times, pushing a 55 gallon drum (500 pounds) on a two-wheel dolly 200 feet and up and down a ramp, climbing a ladder with 50 pounds five times, and performing a three-minute squat.

2

Ed Wyack, told him that defendant was short-staffed and thus could no longer accommodate plaintiff's lifting restrictions. Although in his Rule 56.1 statement plaintiff submits that "Wyack warned plaintiff that he would be disciplined and would receive a lower evaluation if he did not perform the heavy lifting [himself]," plaintiff testified at his deposition that he was never disciplined for failing to lift something over 50 pounds.

In September 1997, plaintiff interviewed for a Buyer I position after sitting for the Buyer I examination and being placed on the Buyer I eligibility list. Plaintiff and the other eight candidates were asked questions relating to their experience, education/training, computer skills, and initiative, and their written communication skills were assessed by a writing sample. Candidates were assigned scores based on their performance and ranked accordingly. With a score of 64.38, plaintiff ranked seventh on the list of nine candidates. Plaintiff maintains that the interviewers discounted his experience,[4] which resulted in a lower ranking and overall score relative to the other candidates, and characterizes the scoring as "subjective." The parties dispute whether plaintiff's interviewers were aware of his back injury and lifting restriction, though appear to agree that plaintiff's interviewers did not know that plaintiff had filed a charge of discrimination against defendant.

On the basis of the interview rankings, defendant appointed four candidates to Buyer I openings between June 1998 and May 1999, all of whom were ranked higher than plaintiff. Plaintiff disputes that these candidates were more qualified than he. On July 9, 2000, the Buyer I

---

[4]Plaintiff contends that he had extensive experience as a buyer for his former employer, Barnes and Reinecke. Plaintiff's Buyer I application, however, describes his previous position as "property inventory planning and control manager," and does not reference buying experience.

3

eligibility list from 1997 expired; plaintiff did not take the next Buyer I eligibility examination in 2000.

From May 1998 through May 2001, plaintiff was also one of seven candidates on the promotion-eligible list for the position of Principal Storekeeper. Plaintiff and the other candidates were interviewed in June 1998, and were asked the same questions relating to their experience, education, judgment, supervisory skills, communications, motivation, and computer skills. Plaintiff ranked seventh on the list, with a score of 8.01. Plaintiff's interviewers were not aware that plaintiff had a lifting restriction or accommodation, or that he had filed any charge of discrimination. On June 30, 1998, the highest ranking candidate was appointed to the position of Principal Storekeeper. Plaintiff maintains that he was more qualified for the position, notwithstanding the other candidate's more extensive supervisory experience.

In 1998, plaintiff's name was removed from the list of employees with access to the document storage area and replaced by that of a maintenance laborer. One consequence of this, according to plaintiff, was that he was left without a laborer to assist him with heavy lifting. Nonetheless, plaintiff did not lose any salary by not having access to the document storage area.

In October 1998, plaintiff filed an informal complaint of discrimination with defendant's internal EEO office alleging disability discrimination and retaliation. In a memorandum generated in response to his complaint, the EEO/Training Manager noted that plaintiff was designated as "a qualified individual with a disability per the provisions of the Americans with Disabilities Act."

In March 1999, defendant required plaintiff to submit documentation to demonstrate that certain absences should count as verified under defendant's collective bargaining agreement with

4

plaintiff's union. After plaintiff provided the requested documentation, which he disputes was actually required under the bargaining agreement, his absences were considered verified as he had requested.

In March 1999, plaintiff's supervisors discussed complaints regarding plaintiff's performance in the storeroom. His supervisors did not give him an oral warning or institute other disciplinary action, however. Plaintiff was also denied computer training in March 1999. No other storekeepers received computer training in or about March 1999. Plaintiff subsequently received SAP computer training, including two courses in March 2000.

On March 8, 1999, plaintiff filed a complaint with the EEOC, claiming disability discrimination and retaliation. He alleged that he had been denied promotions, accommodations, and computer training, and that he had been harassed for use of his sick leave.

Two vacancies for Buyer 1 positions opened on November 30, 1999, and January 18, 2000, but defendant left the positions unfilled. According to defendant, because of preparation for a "go-live" date with SAP and implementation of that program, key staff who would have been responsible for interviewing candidates were not available. Plaintiff disputes the necessity of conducting interviews, arguing that the hiring matrices had been developed back in 1997. Defendant responds that after even one appointment, defendant would have had to conduct additional interviews because the number of eligible candidates would have dropped below five. Plaintiff filed another EEOC charge against defendant in July 2000 regarding defendant's failure to promote him to the Buyer 1 position.[5]

---

[5] In his deposition, plaintiff testified that his supervisor, Ed Wyack, informed him that he would not be promoted because he was "complaining too much." Plaintiff noted, however, that
(continued...)

5

On August 31, 2000, plaintiff interviewed again for the Principal Storekeeper position. Of three possible categories - exceptionally qualified, very qualified, and qualified - plaintiff was described as qualified. In September 2000, defendant appointed a "very qualified" candidate to the position of Principal Storekeeper. In March 2001, after additional candidates were interviewed, another ranking was developed, and the highest ranking candidate was appointed in April 2001. Plaintiff contends that his outside experience made him more qualified than either of the candidates appointed in September 2000 and April 2001; the parties dispute the extent to which plaintiff possessed prior supervisory experience, as well as whether he communicated the details of that experience during his interviews.

On October 1, 2001, plaintiff was appointed Acting Principal Storekeeper. The parties dispute whether plaintiff satisfactorily completed his job responsibilities and properly followed instructions from his supervisor. On December 28, 2001, plaintiff was removed from that position and reassigned to his previous position as Storekeeper. Another employee was subsequently appointed to the position of Principal Storekeeper.

On April 1, 2002, plaintiff became very distraught because he was not provided with a laborer to assist him with heavy lifting, and broke down crying. When plaintiff would not calm down, defendant's Safety Coordinator called an ambulance and plaintiff was subsequently admitted to the hospital. Plaintiff later provided a doctor's note indicating that he could participate in a one-hour interview on April 19, 2002, for the Principal Storekeeper position, and then return to work on April 22, 2002. Defendant expressed concern whether plaintiff posed a

---

⁵(...continued)
Wyack was not relating "any conversation that he had had with anyone in authority to give [plaintiff] a promotion."

threat to himself or others, and required that he undergo a fitness for duty examination, including a psychiatric and psychological examination. Plaintiff disputes that legitimate grounds existed for subjecting him to the exam, but eventually submitted to the exam in June 2002. In the interim, plaintiff was placed on administrative leave with full pay effective April 22, 2002, and did not lose any benefits.

In Count II of his second amended complaint, plaintiff asserts that defendant failed to reasonably accommodate his disability. In Count I, plaintiff alleges that defendant retaliated against him for filing complaints with the EEOC by: (1) failing to promote him to the Buyer I and Principal Storekeeper positions; (2) denying adequate computer training; (3) verbally reprimanding him and issuing false complaints about his performance; (4) removing plaintiff's name from the list of employees with access to the document storage room; (5) removing him from the acting Principal Storekeeper position; and (6) forcing him to submit to a psychiatric evaluation as a condition of returning to work in April 2002. With this background in mind, the court turns to the legal standards governing the instant motion.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v.

Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

With respect to Count II, defendant's alleged failure to accommodate plaintiff's disability as required by the ADA, defendant maintains that plaintiff cannot make a prima facie case under the ADA because his inability to lift more than fifty pounds does not meet the ADA's definition of "disability." Plaintiff responds that in addition to his lifting limitations, his back injury prevents him from standing for long periods of time and limits his abilities to climb and to perform various repetitive activities that involve the use of his back. Plaintiff also points to defendant's willingness to provide a reasonable accommodation for plaintiff's lifting restriction as evidence that defendant regarded him as being disabled.[6]

---

[6] In plaintiff's response to the instant motion, he argues that defendant regarded him as having a psychological disability when it forced plaintiff to take a fitness for duty examination in April 2002 and discriminated against him by failing to promote him in April 2002. Assuming arguendo that defendant perceived plaintiff as having a mental condition that substantially limited a major life activity, plaintiff has not demonstrated that the other individuals who were appointed to the Principal Storekeeper position were less qualified than he, nor has he offered any evidence that undermines defendant's stated explanation for its hiring decisions. Further, plaintiff does not dispute that he was placed on administrative leave, with full salary and benefits, during the pendency of his fitness for duty examination. When viewed in its entirety, the record does not support plaintiff's claim of discrimination based on perceived mental disability, and no reasonable jury could conclude otherwise. Moreover, this claim was not included in any of plaintiff's EEOC charges.

The ADA covers only qualified individuals with disabilities. See 42 U.S.C. § 12112(a). Under the ADA, an individual has a disability if she, (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). "Major life activities" includes, but is not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). In Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 200-201 (2002), the Supreme Court explained that "major life activities" are those "that are of central importance to most people's daily lives," rather than those associated with a particular job.

Applying these standards to the instant dispute, the court concludes that plaintiff's inability to lift more than fifty pounds does not constitute a substantial limitation on a major life activity. As the Seventh Circuit noted in Mack v. Great Dane Trailers, 308 F.3d 776, 782 (7th Cir. 2002), "An inability to lift heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life."[7]

Nor does the evidence support the conclusion that defendant regarded plaintiff as being disabled. Although defendant's 1999 EEO investigation of plaintiff's discrimination charge characterized plaintiff as "a qualified individual with a disability," there is no evidence that defendant regarded plaintiff as being limited in a major life activity. Rather, the evidence indicates that defendant understood that plaintiff's condition restricted only his ability to lift more than fifty pounds as it affected plaintiff's job as a Storekeeper, which, as stated above, is a

---

[7] Nor does the evidence suggest that plaintiff's inability to lift more than fifty pounds somehow limits him in other major life activities, such as caring for himself. Id.

9

particular job rather than a major life activity. See Wright v. Illinois Department of Corrections, 204 F.3d 727, 731 (7th Cir. 2000) (holding that the plaintiff with ankle injury was not "regarded as" disabled by employer - notwithstanding employer's "yes" answer to interrogatory asking whether it considered the plaintiff to be disabled - because there was no evidence that the defendant regarded the plaintiff as being limited in a major life activity).

Plaintiff's interrogatory response, in which he asserts an inability to climb, stand for long periods of time, and complete strenuous, repetitive activities with his back, does not alter the court's conclusion. To begin, plaintiff's asserted inability to climb and stand for long periods of time contradicts his admission that he satisfactorily performed all tasks included in the pre-placement physical screening (other than lifting 85 pounds), such as climbing a ladder five times with fifty pounds. The appropriate inquiry focuses on plaintiff's condition at the time of the alleged discrimination, and the record suggests that no reasonable jury would conclude that plaintiff was limited in his ability to climb or stand during the period of time giving rise to the instant dispute. As noted earlier, "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Further, plaintiff's vague statement that he is unable to complete "strenuous, repetitive activities on the back" is insufficient to support the conclusion that defendant's back injury interfered with the central functions of his daily life, or that defendant perceived such a limitation. The court thus finds that no reasonable jury could conclude that plaintiff is a person with a disability, as defined by the ADA.

Because the court concludes that plaintiff has failed to establish a prima facie case, the court need not reach the merits of parties' arguments regarding defendant's accommodation of plaintiff's back injury. Accordingly, defendant is entitled to summary judgment on Count II of plaintiff's complaint.

Because the ADA's proscription on retaliation, 42 U.S.C. § 12203(a), employs language comparable to that of Title VII, 42 U.S.C. § 2000e-3(a), the court turns to Title VII cases for the appropriate standards governing plaintiff's ADA retaliation claim. Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499 (7th Cir. 1998). Because plaintiff has not offered direct evidence of retaliation, to prove his claim he must demonstrate that: (1) he engaged in statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite meeting his employer's legitimate expectations, he suffered a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002); Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640 (7th Cir. 2002). When proceeding under the indirect method, a plaintiff need not demonstrate "even an attenuated causal link" between his protected expression and the adverse employment action. Haywood v. Lucent Technologies, Inc., 323 F.3d 524, 531 (7th Cir. 2003) (citations omitted).

If the plaintiff establishes these elements, the burden shifts to the defendant to come forward with a legitimate, non-invidious reason for the adverse employment action. Id. Once the defendant presents a legitimate, non-invidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. Id.

11

To begin, defendant correctly points out that plaintiff brought his retaliation claim under Title VII, rather than the ADA. Plaintiff's charges of disability discrimination are not properly characterized as opposing practices in violation of Title VII, but rather oppose practices allegedly in violation of the ADA. Defendant argues that because Title VII retaliation claims must be rooted in opposition to employment practices that violate Title VII, plaintiff failed to meet the first prong of the test described above. Based on the plain text of the statute, the court agrees.

Nonetheless, even if the court construed Count I as alleging retaliation under the ADA, specifically 42 U.S.C. § 12203(a), rather than under Title VII, plaintiff's retaliation claim would still fail as a matter of law. Plaintiff's allegations regarding computer training, verbal reprimands and complaints about his performance, as well as removal of plaintiff's name from the list of employees with access to the document storage room, do not constitute "adverse employment actions."[8] Indeed, there is no evidence that these actions effected a quantitative or qualitative change of the terms and conditions of plaintiff's employment. See id. at 532; Oest v. Illinois Department of Corrections, 240 F.3d 605, 612 (7th Cir. 2001) ("Adverse actions must be materially adverse to be actionable, meaning more than a 'mere inconvenience' or an alteration of job responsibilities.").

Even if the court concluded otherwise, there is no evidence of similarly situated employees who were treated more favorably than plaintiff in these respects. No Storekeepers

---

[8]The court rejects plaintiff's invitation to view these actions collectively as an adverse employment action. In Vergara v. Bentsen, 868 F. Supp. 581 (S.D.N.Y. 1994), cited by plaintiff, the district court considered whether certain matters could be considered cumulatively for purposes of meeting the statute of limitations, rather than satisfying the "adverse employment action" element of plaintiff's retaliation claim. Accordingly, Vergara does not guide this court's treatment of the alleged retaliatory acts chronicled in plaintiff's complaint.

12

received computer training in or about March 1999, when plaintiff alleges he was denied training. Further, there is no evidence that other Storekeepers' names were placed on the list of people with permission to enter the document storage area, or that other Storekeepers' names were not removed from that list. Moreover, even assuming that plaintiff could satisfy his prima facie case with respect to these incidents, he has not adduced any evidence that defendant's explanation of its conduct is mere pretext. Heeding the Seventh Circuit's admonition that a court shall not "sit as a super-personnel department over employers scrutinizing and second-guessing every decision they make," Traylor v. Brown, 295 F.3d 783, 790 (7th Cir. 2002), the court concludes that defendant is entitled to summary judgment on plaintiff's claim of retaliation pertaining to computer training, verbal reprimands and complaints, and removal of his name from the list of people with access to the storage room.

Defendant is also entitled to summary judgment on plaintiff's claim of retaliation involving defendant's failure to promote him to the Buyer I and Principal Storekeeper positions. Notwithstanding the fact that plaintiff has not demonstrated any entitlement to the Buyer I or Principal Storekeeper positions, the court will assume that defendant's failure to promote plaintiff to the Buyer I and Principal Storekeeper positions constitutes an adverse employment action. See Markel v. Board of Regents of University of Wisconsin System, 276 F.3d 906, 911 (7th Cir. 2002) ("Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay.").

Even assuming that plaintiff could satisfy his prima facie case, defendant has produced a legitimate, non-invidious explanation for its hiring decisions: matrices rating all of the candidates for each position. Plaintiff does not dispute that candidates were promoted based upon their

13

relative ratings. Rather, plaintiff maintains that these ratings "were subjective and showed that the interviewers ignored the wealth of experience plaintiff had at both [the District] and in his prior jobs," and notes that the interviewers themselves conceded that the rankings were subjective. According to plaintiff, "it is clear that defendant willfully ignored plaintiff's experience and inflated the limited experience of some of the other candidates." Plaintiff does not dispute that all Buyer I candidates were asked the same questions in their interviews, and that the Principal Storekeeper candidates were asked the same questions in their interviews.

Defendant's use of subjective criteria in the interview process does not undermine its stated reason for its hiring decisions. "[U]se of a subjective, even arbitrary, selection process is not proof of discrimination." Diettrich v. Northwest Airlines, 168 F.3d 961 (7th Cir. 1999) (citations omitted). Moreover, the law does not require employers to "prefer paper-heavy evaluations over contextual assessments by knowledgeable reviewers." Scott v. Parkview Memorial Hospital, 175 F.3d 523, 525 (7th Cir. 1999).

Plaintiff has offered nothing to suggest that his qualifications significantly exceeded those of the other candidates, and thus the court concludes that defendant's hiring matrices are not merely pretextual. See Rabinowitz v. Pena, 89 F.3d 482, 487 (7th Cir. 1996) (finding no evidence of pretext because the record lacked "sufficient support for the proposition that [the plaintiff] was so much more qualified than the other candidates that discrimination likely entered the decisionmaking process"). With respect to the Buyer I position, for example, plaintiff's Buyer I application conspicuously omitted any mention of buying experience, which supports the conclusion that defendant's ranking of plaintiff was legitimate rather than pretextual. Moreover, plaintiff admits that his interviewers did not know that he had filed a charge of disability

14

discrimination against defendant, further undermining his argument that the ratings were pretext for retaliation.

As for defendant's failure to fill the two Buyer I vacancies that arose in November 1999 and January 2000, plaintiff has not established that similarly situated individuals on the list who did not engage in statutorily protected activity were treated more favorably, or that he was in fact next in line to be promoted. Further, even assuming a prima facie case, plaintiff again has failed to demonstrate that defendant's reasons for not filling the position were pretextual. As noted above, once the list of promotion-eligible candidates dipped below five people, more interviews were conducted. Thus, plaintiff's reference to the 1997 matrix does not undermine defendant's claim that, due to the implementation of the SAP program, defendant did not have personnel available to interview candidates for the Buyer I position and thus declined to fill the vacancies. Accordingly, no reasonable jury could conclude that defendant's decision not to promote plaintiff to the Buyer I and Principal Storekeeper positions was retaliatory.

The court further finds that no reasonable jury could conclude that plaintiff's removal from the position of Acting Principal Storekeeper was an act of retaliation. Whether or not plaintiff agrees with defendant's reasons for terminating his position as Acting Principal Storekeeper, plaintiff has not demonstrated that defendant's purported dissatisfaction with plaintiff's performance is pretextual. If anything, the fact that plaintiff was appointed to that position in October 2001, fifteen months after his July 2000 charge of discrimination, suggests that defendant was not retaliating against plaintiff for engaging in statutorily protected expression

when it reassigned him to his position at Storekeeper in December 2001. Defendant is therefore entitled to summary judgment on plaintiff's retaliation claim.[9]

## CONCLUSION

For the reasons stated herein, the court grants defendant's motion for summary judgment in its entirety.

**ENTER:** April 23, 2003

Robert W. Gettleman
United States District Judge

---

[9] Plaintiff does not contest defendant's argument that its refusal to allow plaintiff to return to work in April 2002 and its alleged failure to accommodate him do not constitute retaliation.

16